IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

RECEIVED CLERK'S OFFICE

2016 AUG 30 A 10: 37

DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON, SC

| | |
|---|---|
| John P. Irvine, Robert Miller, Jeremy Etress, Linda Busillo, Kendra Grant, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Destination Wild Dunes Management, Inc., Destination Hotels & Resorts, Inc., and Lowe Hospitality Group Inc.,<br><br>Defendants. | Civil Action No.: 2:15-cv-980-RMG<br><br>**ORDER** |

This matter comes before the Court on the Parties' Joint Motion for Approval of Settlement. (Dkt. No. 147). For the reasons below, the Court **GRANTS** the motion.

## I. Background

Plaintiff Irvine filed this action on March 1, 2015, alleging that Defendants violated the Fair Labor Standards Act (FLSA) by requiring tipped employees to perform non-tipped work and, thereby, owed tipped employees minimum wage for hours worked. Irvine sought damages, equitable relief, penalties, attorneys' fees, and costs on behalf of himself and "others similarly situated." Defendants filed a motion to dismiss, which the Court denied on May 27, 2015. (Dkt. No. 22). Plaintiffs Miller, Etress, Busillo, and Grant joined the lawsuit, and this Court conditionally certified the class in this Fair Labor Standards Act ("FLSA") action on September 14, 2015. (Dkt. No. 59).

During the opt-in period, 67 Plaintiffs opted into the class. After conducting more than 15 depositions and other discovery, the Parties entered into mediation. The Parties reached an

1

agreement regarding the settlement of Plaintiffs' claims during mediation, and they reached an agreement regarding attorneys' fees shortly thereafter. (Dkt. No. 147-2).

Under the terms of the settlement, Plaintiffs would receive $455,000, inclusive of attorneys' fees and expenses. The total settlement amount consists of (1) $179,000 distributed pro-rata to the Plaintiffs; (2) $30,000 in service awards awarded to certain Plaintiffs; and (3) $246,000 in attorney's fees and costs. (Dkt. No. 147-2 at 5–7). In addition the monetary component, Defendants agreed to implement a change in policy and prospectively pay all tipped employees an hourly rate equal to or exceeding minimum wage for all hours worked other than the hours in which each tipped employee's assigned dining room, lounge, or bar is open to the public. (Dkt. No. 147-2 at 7–8). In consideration, each Plaintiff will provide Defendant with a limited release of FLSA and wage claims and covenant not to sue for claims raised in the Amended Complaint.

The proposed settlement covers only those individuals who filed or opted-into the lawsuit, and does not resolve or release the claims of those who did not join the lawsuit. The individual damage awards range from $60.56 to $20,597.38, with an average payment of $2,594.20. (Dkt. No. 147-2 at 13–16). Plaintiffs receive their settlement checks by executing the release of their wage claims. If a Plaintiff fails to execute the release or negotiate his or her settlement check within 90 days, the check will be null and void. (Dkt. No. 147-2 at 9).

The Parties asked the Court to certify the settlement class and approve the settlement, and the Court held a settlement hearing on August 30, 2016.

## II. Discussion

*A. Certification of the Collective Settlement Class*

Before approving a FLSA collective action settlement, the Court must make a final class certification determination. *See* 29 U.S.C. § 219(b); *Carter v. Anderson Merchs., LP*, Nos. 08–cv–00025, 09–cv–0216, 2010 WL 144067, at *3 (C.D. Cal. Jan. 7, 2010). In determining whether to grant final certification, the Court looks to "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations." *Rawls v. Augustine Home Health Care, Inc.*, 244 F.R.D. 298, 300 (D. Md. 2007).

Here, the factual circumstances underlying the claims of the 67 existing Opt-In Plaintiffs are more similar than disparate. They all worked as tipped employees for Defendants. Although their job titles and descriptions vary, the alleged injuries are factually consistent—performing non-tipped work for which they allege they should have been compensated at a higher wage. Second, there is no indication that there are individual-specific defenses that would predominate. Finally, with respect to fairness and procedural considerations, a class-wide settlement is an efficient and cost-effective means of resolving the common issue (*i.e.*, the legality of Defendants' pay practices for non-tipped employees). *See Rawls*, 344 F.R.D. at 298 (noting that collective action treatment would serve as an efficient means of resolving a facility-wide FLSA dispute and would further the purposes of § 216(b) by allowing the class members to pool their resources).

In sum, because the Named Plaintiffs are similarly situated to the members of the proposed settlement class, final certification pursuant to 29 U.S.C. § 216(b) is appropriate.

### B. *Approving the Proposed Settlement*

To determine whether to approve the proposed settlement, the Court must determine (i) whether the award reflects a reasonable compromise over the issues in dispute; (ii) whether the proposed award of attorneys' fees and costs are reasonable and (iii) whether the service awards are appropriate.

#### i. *Fairness and Reasonableness of Award Amounts*

The FLSA's provisions are generally not subject to waiver, but a district court may approve a settlement if the settlement reflects a "reasonable compromise of disputed issues" rather than "a mere waiver of statutory rights brought about by an employer's overreaching." *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982). Although the Fourth Circuit has not directly addressed what factors district courts should consider when analyzing proposed FLSA settlements, district courts tend to follow the analysis the Eleventh Circuit put forth in *Lynn's Food Stores*: (1) Is there a bona fide dispute? (2) Is the proposed settlement fair and reasonable? *See, e.g., Saman v. LBDP, Inc.*, No. CIV.A. DKC 12-1083, 2013 WL 2949047, at *2 (D. Md. June 13, 2013); *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 1:08CV1310(AJT/JFA), 2009 WL 3094955, at *1 (E.D. Va. Sept. 28, 2009) (unpublished).

As a preliminary matter, a bona fide dispute exists. Plaintiffs allege that Defendants failed to pay them and other tipped employees minimum wages in violation of the FLSA, and Defendants denied these allegations on factual and legal grounds. (Dkt. N0 147-1 at 11)

To determine whether a proposed FLSA settlement is fair and reasonable, a court should consider the following factors: "(1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have

4

represented the plaintiffs; (5) the opinions of class counsel and class members after receiving notice of the settlement whether expressed directly or through failure to object; and (6) the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery." *Lomascolo*, 2009 WL 3094955, at *10. This Court addresses each in turn.

This complaint was filed in March 2015 (Dkt. No. 1), and discovery was ongoing when the parties entered mediation. After conducting more than fifteen depositions, the parties agreed to postpone six additional scheduled depositions. (Dkt. No. 147-1 at 4).

The Court must also determine whether proceedings have progressed to a stage "sufficient to permit the parties and their counsel to obtain and review evidence, to evaluate their claims and defenses and to engage in informed arms-length settlement negotiations with the understanding that [trial] would be a difficult and costly undertaking." *Lomascolo*, 2009 WL 3094955, at *11. Here, the parties engaged in extensive discovery regarding their claims and defenses. Furthermore, they engaged in motions practice before entering into final settlement negotiations. The Court is satisfied that this information allowed the parties to successfully participate in arms-length negotiations.

Absent any evidence of fraud or collusion, the Court presumes none occurred. *Lomascolo*, 2009 WL 3094955, at *12. Here, nothing suggests fraud or collusion.

The Court next turns to Plaintiffs' counsels' experience and opinion. Plaintiff's counsel has tried employment cases to verdict, including before this Court. The Court is satisfied that Plaintiffs' counsel is competent to handle the settlement of this matter.

Although the Court will not blindly follow counsel's opinion on a settlement's fairness and reasonableness, it will afford it some weight. *See Flinn v. FMC Corp.*, 528 F.2d 1169, 1173

(4th Cir. 1975). In this case, Plaintiffs' counsel has moved for approval, and Plaintiffs have expressed approval of the settlement.

Finally, in other cases analyzing the fairness of a settlement, courts compared the amount plaintiffs sought to the amount of the settlement. For example, in *Saman v. LBDP, Inc.*, the district court noted that a $28,000 proposed settlement was 84.4 percent of the $33,000 that plaintiff initially sought. No. CIV.A. DKC 12-1083, 2013 WL 2949047, at *5 (D. Md. June 13, 2013). "In light of the risks and costs associated with proceeding further and Defendants' potentially viable defenses" the court held that the amount reflected a reasonable compromise. *Id.*

Here, the $179,000 proposed settlement award represents the aggregate amount of each Plaintiff's alleged unpaid minimum wages. In other words, Plaintiffs receive 100 cents on the dollar for their underpayment claims. In light of the uncertainties and additional costs involved with trial, the Court finds the settlement amount to be fair and reasonable.

*ii. Reasonableness of Attorney's Fees*

The Fair Labor Standards Act provides that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorneys' fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). The Supreme Court has held that the lodestar number generally represents a reasonable attorney's fee. To calculate the lodestar number the court multiplies a reasonable hourly rate by the number of hours reasonably expended. *See Duprey v. Scotts Co. LLC*, 30 F. Supp. 3d 404, 412 (D. Md. 2014). In this particular case, Plaintiffs' counsel expended 1046.9 hours of legal work at rates of $250 and $300/hour, for a combined lodestar number of $296,260. (Dkt. Nos. 147-3, 147-4). In addition, Plaintiff's counsel expended $4,541.77 in costs. (*Id.*). Because the proposed attorneys' fees of

$246,000 are less than the lodestar number and fees, the Court finds the proposed attorney's fee to be reasonable.

### iii. Reasonableness of Service Awards

Service awards, or incentive payments, have been awarded in FLSA collective actions. *See, e.g., Edelen v. Am. Residential Servs., LLC*, No. CIV.A. DKC 11-2744, 2013 WL 3816986, at *16 (D. Md. July 22, 2013). To determine whether such a payment is warranted, the Court must "consider 'the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation.'" *Id.* (quoting *Hoffman v. First Student, Inc.*, No. CIV. WDQ-06-1882, 2010 WL 1176641, at *3 (D. Md. Mar. 23, 2010)).

Under the terms of the settlement, the Named Plaintiffs and other Opt-in Plaintiffs who participated in depositions and provided written discovery would receive service awards totaling $30,000. Specifically, (1) Named Plaintiffs Irvine, Miller, and Busillo would receive $5,000 each; (2) Plaintiffs Etress and Grant would receive $2,500 each; and (3) Opt-in Plaintiffs Catherine Herman, Sean Roche, Angie Villegas, Francis Farley, Chris Ciappa, Robert Melton, Olivia Hammond, Ana Alexandra Richards, Rebecca Davis, and Marcus Morillo would receive $1,000 each. (Dkt. No. 147-2 at 6).

The remaining Opt-in Plaintiffs benefitted substantially from the efforts of these individuals. Each of the above-named individuals participated in depositions and written discovery, and the 5 Named Plaintiffs initially came forward with these claims, potentially placing their careers in food and beverage service at risk. Without their actions, this settlement may not have been achieved. Furthermore, the service award appears to have been negotiated independently of the award for damages, so it does not diminish the award to the Opt-in

Plaintiffs. And finally, the proposed award amounts are consistent with, if not less than, service awards granted in other FLSA cases. *See, e.g., Wineland v. Casey's Gen. Stores, Inc.*, 2657 F.R.D. 669, 677–78 (S.D. Iowa 2009) (approving incentive payments of $10,000 per named plaintiff and $1,000 for each deponent in FLSA case). Accordingly, the Court finds the service awards to be appropriate.

### III. Conclusion

For the abovementioned reasons, the Court GRANTS the joint motion to certify the settlement class and approve settlement (Dkt. No. 147), and the action is DISMISSED with prejudice.

**AND IT IS SO ORDERED.**

_____
Richard Mark Gergel
United States District Court Judge

August 3⊘, 2016
Charleston, South Carolina

8